Application e’or Rehearing.
The opinion of the court was delivered by
Watkins, J.
It appears from the oral argument, as well as from the printed briefs of counsel on each side of the case, that the principal, if not the only question, which is agitated now is that of the legal qualification of Anatole Hebert to have served upon the jury; and the record and opinion show that the defendant, Williams, was first tried upon an indictment for murder and found guilty of manslaughter, and upon a trial afterward on the charge of manslaughter he was convicted and sentenced.
It further appears that when Anatole Hebert was tendered as a juror, the trial judge held him to be a competent juror, upon an examination on his voir dire, and the defendant’s counsel was forced to challenge him peremptorily; and that on that account, and in consequence of the judge’s ruling, his peremptory challenges became exhausted and he was necessitated to submit to objectionable talesmen being sworn as jurymen.
The ground of the disqualification of Anatole Hebert was that in the course of his interrogation he stated that he had conversed with his brother, Ignaee Hebert, about the case, some ten or fifteen minutes, he having been one of the jury who tried the defendant on the indictment for murder and found him guilty of manslaughter; and that from what he had heard his brother say he had formed an ppinion which he still entertained.
But it also appears from the record as well as the opinion that, in reply to questions which were propounded by the court, he had *1150 never discussed the facts of the case with any of the witnesses, nor heard any one of them give a version of the case; and that in spite of what he had heard his brother say, he could entirely discard from his mind any impression it may have created and “ try the case according to the evidence as given to (him) * * * and. that alone and the law as (he may) hear it from the court.”
The foundation of the disqualification of a person for service as a juror is that he has formed an opinion as to the guilt or innocence of the accused whom he would be called upon to try, and (he question arises as to how he could form an opinion as to his guilt or innocence without having ascertained from some source the character of evidence which was to be brought before the jury in the course of the trial.
If Hebert had conversed with the witnesses who were to be produced on the trial; or he had heard their statements made to others; or he had heard them give in their evidence on a former trial; or perhaps he had read in a newspaper what purported to have been a full report of the testimony of the witnesses as having been adduced in the course of a judicial investigation — it might be said with confidence that a deliberately fixed opinion based thereon would have rendered him incompetent, and, therefore, a proper subject for a challenge for cause. But he only heard the version of the facts as given by his brother, who served on the former trial. At most that statement was in the nature of hearsay; and it is notan unreasonable presumption that any impression which same might have created upon his mind would have yielded to the evidence when adduced if it had proved of a different character.
It appears to our minds that this was the tendency and evident object of the interrogation of the trial judge, and that it was the manifest purport of the juror’s reply thereto.
It has been settled by repeated adjudications of this court that it is only a fixed and settled opinion, founded upon a fair statement and knowledge of the facts, that is disqualifying.
In State vs. Farrer, 35 An. 315, it was held that “the opinion which disqualified a juror is a fixed, deliberate and determined one which can not be changed.”
And very much the same thing was said in State vs. Dorsey, 40 An. 739, affirming State vs. Farrer and the court employed this expression, viz.:
*1151 “ The opinion of the juror in question may be said to have been a fixed or decided opinion, but not an unyielding and determined one. It is not pretended — judging by the recitals of the defendant’s bill of exceptions — that the opinion of the juror was formed from hearing the witness’ testimony or statements and it must therefore have been founded upon rumor and could not have been á determined opinion, such as would be disqualifying.”
Much the same is true of hearsay statements of persons not under oath, such as the representations which were made to Anatole Hebert by his brother, after the first trial was completed and his connection with the ease was at an end — however honest and conscientious the representations may have been.
The opinions cited are in keeping with those expressed in State vs. DeRance, 34 An. 186, and in State vs. Dugay, 35 An. 327, in which a careful review of adjudicated cates was made.
And those expressions are in accord with the opinions of the most approved text writers.
For instance, one author says that the proper inquiry is as to the nature and strength of the opinion and not its source. Proffatt on Jury Trials, Secs. 186 and 187.
But the most complete disquisition on the subject which has come under observation is that of Mr. Seymour D. Thompson in his excellent treatise on juries, from which we make the following extract, viz.:
“The character of opinion which will form a subject of challenge for principal cause has been variously stated. Thus, it must ‘ be fixed and settled’ (Schoeffler vs. State, 3 Wisconsin, 823; People vs. King, 27 Cal. 507); ‘fixed and absolute’ (People vs. Bodine, 1 Den. 308; State vs. Howard, 17 N. H. 192); ‘ fixed and determined ’ (Staup vs. Commonwealth, 74 Penn. St. 458); ‘ fixed and positive’ (Rafe vs. State, 20 Ga. 60); ‘ decided ’ (Oslander vs. Commonwealth, 3 Leigh, 780); ‘ substantial ’ (Sprouce vs. Commonwealth, 2 Virginia Cas. 375; Jackson vs. Commonwealth, 23 Gratton, 919); ‘deliberately formed’ (State vs. George, 8 Rob. 535; State vs. Brown, 4 An. 505; Wright vs. State, 18 Ga. 383).” Thompson & Merriam on Juries, Sec. 211.
The author then remarks that, “ of course all of these terms are intended to convey one and the same idea;” and in proof of this he cites the case of People vs. Stout, 4 Park, Cr. R. 117, and also State *1152 vs. Kingsbury, 58 Maine, 238, in which all of the foregoing terms, substantially, are employed as being convertible, viz.:
“This,” the disqualifying opinion, “ it is well settled in numerous cases, must be a fixed, absolute, positive, definite, settled, decided, unconditional opinion. The rule is, uniformly, laid down by the use of one of these words, or words of equivalent force. A conditional, contingent, hypothetical, indeterminate, floating, indefinite, uncertain opinion will not do,” etc. Thompson & Merriam on Juries, Sec. 211; see, also, State vs. Hugel, 27 An. 375; State vs. McGee, 36 An. 206; State vs. Coleman, 27 An. 691; State vs. Ford, 37 An. 443; State vs. Revelles, 35 An. 302; State vs. Vines, 34 An. 1073; State vs. Birdwell, 36 An. 859; State vs. Foster, 36 An. 877; State vs. Melton, 37 An. 77; State vs. Boyd, 38 An. 374; State vs. Ward, 14 An. 673; State vs. Caufield, 23 An. 148; Wharton’s Cr. Pl. and Pr., Sec. 651, citing the last two cases; to the same effect is State vs. Bunger, 14 An. 461; see, particularly, State vs. Johnson, 33 An. 889, as contrasted with State vs. Jackson, 37 An. 768.
Having studied the jurisprudence of this State on the question of the disqualification of jurors, and tested the same by the expressions of authoritative text writers, we are fully satisfied that Anatole Hebert was a competent juror, and that the trial judge committed no error in so, ruling.
It is therefore ordered and decreed that our former decree be set aside; and it is now ordered and decreed that the verdict, and judgment thereon rendered in the court below be affirmed.
Nicholls, O. J., absent; ill.